# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION:
04-CV-10192-WGY

| | |
|---|---|
| AZUBUKO - <br>     Plaintiff | ) <br> ) <br> ) <br> ) |
| vs. | ) <br> ) |
| BOARD OF BAR OVERSEERS OF THE <br> SUPREME JUDICIAL COURT - <br>     Defendant | ) <br> ) <br> ) <br> ) |

## PLAINTIFF'S ANSWER TO THE SCHEDULED HEARING ON THE DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

## INTRODUCTION

The head was in keeping with the Court's notice of hearing scheduled at 02:00 P.M. at the Harvard Law School, Austin Hall, Ames Courtroom, Cambridge, MA on March 16th, 2004, which gave the Plaintiff February 23rd, 2004 to submit his reply. The notice was dated February 13th, 2004 and was postmarked 16th and 18th February 2004. The Plaintiff received it on Saturday – February 21st, 2004 hence the Plaintiff's sought of enlargement of time to submit the *reply* on March 5th, 2004. These would be the Plaintiff's un-serialized panoramic and recherché responses:

## 01) PREAMBLES OF THE CONSTITUTION OF THE UNITED STATES' OF AMERICA AND CONSTITUTION OF THE COMMONWEALTH OF MASSACHUSETTS

Central to the composition of the sub-heads, the deceitful nature of the Defendant's effusive prayer needed not be over-evangelized. In democratic dispensation States, Constitution typically gave credence to the rule of law prevalence. The lodestar for administration of justice hinged reasonably on the Constitution. The surrounding circumstances to the case palpably deviated from the *preambles* of the significant barometers of the case's intelligent resolution. Having established that, it would be crassly unintelligent for the Defendant to argue thunderously and babyishly that the Court had no jurisdiction over the case. [Exhibits 1 and 2] The Defendant's prayer syllogism defied logic vis-a-vis Exhibits 1 and 2. However, the Plaintiff agreed with that on another ground – the case should be re-transferred to the United States' District Court – Middle District – Macon, Georgia. It appeared that the Defendant wanted justice two for a penny.

## 02)  CIVIL RIGHTS

It would be near moral turpitude for the Defendant to argue that the Court had no jurisdiction over Civil Rights Acts in the United States of America. [Exhibit 3]  The Defendant had no monopoly to legal critical and creative thinking. The Defendant could encode, but the Plaintiff could decode too, in a state of grace!

## 03)  COMPLAINT AMENDMENT

Judicial economy necessitated the sub-head. The basis for the commencement of the proceedings was triggered off by some individuals' actions – Assistant Attorney S. M. Giorlandino of the Office of the Attorney General of Massachusetts, Judge Margaret Hinkle of the Suffolk Superior Court, Massachusetts and the theft and fraud of Mr. Emilio Zapata lawsuit at the Boston Municipal Court. It would be proper to include Attorney Hines, who obstructed justice in the lawsuit against Mr. Zapata. The Court

should order the said Court to vacate the case and for jury trial. Enjoining them in the two distinctive lawsuits would be in conformity with the Federal Rule of Civil Procedure 19.

The Plaintiff prayed the Court to order the Defendant to furnish the Plaintiff with the names of its employees who dealt with the Complaint of the Plaintiff when it was filed with the Defendant. [*Coffin v. South Carolina Dept. of Social Services* (1983 DC SC) 562 F. Supp. 579, 33 BNA FEP Cas 1267, 37 FR Serv 2d 170); *True v. New York State Dept. of Correctional Services* (1984, WD NY) 613 F Supp 27, 36 BNA FEP Cas 1048, 26 BNA WH Cas 1678, 36 CCH EPOD # 35210; *Thompson v. New York* (1979, ND NY) 487 F Supp 212]

## 04)    DEFENDANT'S ARGUMENT

The Defendant or the Attorney General of Massachusetts could object to the amendment prayer of the Plaintiff's on the basis of *res judicata*. The Plaintiff did sue them and characteristically, justice was suppressed. The Plaintiff's answer to that would be that res judicata should not be seen as a one-way street: there existed exists – res judicata had qualifications. The Defendant was involved at the third stage and it would not be intelligent to exclude the other two stages of the basis for the proceedings.

## 05)    STATE IS NOT A "PERSON" SAGA

Central to careful analysis, the reasoning was palpably unintelligent. Federal civil rights law should not be killed on that basis. That viewpoint sprang from *Will v. Michigan Department of Police, 491 U.S. 58 (1985),* which stated that "a State is not a "person" within the meaning of 42 U.S.C. 1983 because of the application of the Eleventh Amendment. The background of the author of the judgment necessitated careful examination. The Judge could have been appointed to the bench from secretarial school.

The Plaintiff had nothing against secretaries. The Plaintiff worked as a secretary after high school. The sweeping conclusion contradicted the United States' Constitutional provisions under the 11th Amendment, thus "Suits Against State Officials" and "Tort Actions Against State Officials." [Exhibits 4 and 5] It did not take into consideration that the States should be seen as *legal entities.* A legal entity should be regarded as a "person." It could sue and be sued. Again, under democratic dispensation, "the search for absolute sovereignty remains a continuum.[1] The notion wiped off tenaciously held universal doctrines of *agent-principal relationship* and *master respondeat.* The proceedings were not criminal in nature!

## 06)    STATE NOT A "PERSON" INCONSISTENCY

At a point, it appeared that the only way a State could be sued successfully was on the basis of "personal-capacity" of States' employees. That was unconstitutional. The babyish approach should not be universalized, because the Civil Rights Acts focused on "person" and not institutions. Indeed, institutions were *legal entities*; therefore, they were "persons." The syllogism was justifiable, timelessly. The Lawmakers were human beings with their limitations. Therefore, Courts had the moral and legal duties to giving human face to law interpretations! Two excerpts from 42 USCS Section 1981 Note 118 and Nos. 114 and 115 read:

"This section, and sections 1983 and 1984 of this title do not grant jurisdiction, but merely provide remedy in cases in which jurisdiction is present pursuant to section 1343 of Title 28. *Giles v. Equal Employment Opportunity Commission,* D.C.Mo. 1981, 520 F.Supp. 1198" and

"Federal courts are provided for accommodation of rights granted under this section and Section 1983 of this title and availability of state

---

[1] [Who controlled others and not in return being controlled?]

courts for protection of constitutional rights does not require federal courts to abstain. *Jordan v. Hutcheson*, C.A. 4 (Va.) 1963, 323 F.2d 597."

## 07)   MASSACHUSETTS' DECLARATION OF RIGHTS AND MASSACHUSETTS' TORTS CLAIM ACT

The unreasonable argument of personal-capacity proceedings, because of the Eleventh Amendment was completely unimportant. The composition of the Massachusetts Declaration of Rights - Article 5 - which (**a**) demanded accountability from the State and the three branches of government and (**b**) that there was never a legislatively enacted amendment to the Constitution of the Commonwealth of Massachusetts repealing Article 5 of the Declaration of Rights, which guaranteed accountability by all three arms of government to the people, of which Azubuko is one.

The importance of the Massachusetts' General Law Chapter 258 Sections 1 and 4 would not be over-emphasized. [Exhibits 6 and 7]

## 08)   COURT ACCESS

The sub-head originated from 42 USCS Section 1983, n 1194 No. 1193. The insidious and invidious actions of Mr. Giorlandino culminated into the Plaintiff's deprivation of direct access to the Suffolk Superior Court. The excerpts read:

"Complaint was sufficient to state claim under 42 USC Section 1983 for infringement of plaintiffs' constitutional right of access to courts, where it alleged that plaintiffs filed suit in state court against water and sewer commission and city, and that defendants, by filing frivolous counterclaim, conspired to force plaintiffs to settle lawsuit and sell their property to city. *Harrison v. Springdale Water & Sewer Com.* (1986 CA8 Ark) 780 F2d 1422."

"Complaint by mentally retarded persons placed in state institution that defendants' unconstitutionally restricted mentally retarded persons'

access to courts in violation of Fourteenth Amendment stated Section 1983 cause of action. *Armstead v. Pingree* (1986, MD Fla) 629 F Supp 273."

## 09)    THE COURT'S DECISION AND 14TH AMENDMENT

If the Court elected, the proceedings could proceed intact. However, the Plaintiff as the Master of the case needed not the Court's authorization to amend the Complaint. Having established that, the Plaintiff would like the Court's authorization to amend the Complaint for judicial economy. The Defendant's negligence was over and coercive as required by the Fourteenth Amendment. [*Asmar v. Keilman* (1991, E.D. Mich) 756 F. Supp 332] An excerpt from 42 USCS 1985, n 106 read:

"State officers are liable for conspiracy to violate constitutional rights of plaintiffs, even though acts are actually performed by an unqualified or unauthorized officer, if state officers enter into conspiracy with actor. *Arkansas use of Temple v. Central Surety & Ins. Corp.* (1952, DC Ark) 102 F Supp 444."

## 10)    JURISDICTION AND VENUE

The Plaintiff knew not what motivated the Defendant to originate the matter in question. The Court had jurisdiction if not for any other thing, but on constitutional ground. [United States' Constitution (Section 2)]

An excerpt read, thus:

"The national contacts doctrine provides that in federal question cases, the court has personal jurisdiction over defendants when there is a statutory provision for nationwide service of process and defendants have sufficient contacts with United States, not the state in which the federal court sits." *Federal Trade Commission v. Jim Walter Corp.*, 651 F.2d 251, 256-57 (5th Cir. Unit A July 1981)."

If the Defendant thought that the Court lacked jurisdiction on the basis of *Rooker-Feldman* doctrine, the Defendant was flatly wrong! Like any other legal doctrines, it had qualifications just like *statute of limitations, res*

*judicata, standing to sue,* et cetera.  On the subject matter, an excerpt's footnote read:

"In re Glass, 240 B.R. at 786; see *Wood v. Orange County*, 715 F.2d 1543, 1547 (11th Cir. 1983) (holding Rooker bar only applies to issues plaintiff had reasonable opportunity to raise) cert. denied, 467 U.S. 1210 (1984); *Biddulph v. Mortham*, 89 F.3d 1491, 1495 n.1 (11th Cir. 1996).  The Court in Glass also noted that there appear to be several other exceptions to the hard and fast Fooker-Feldman rule of federal-state comity.  See Glass, 240 B.R. at 785-86.  These exceptions generally come into play when the state proceedings are considered a legal nullity, and thus, are void ab initio.  See *Kalb v. Feuerstein*, 308 U.S. 433, 438-40 (1940) (holding judgment in violation of automatic stay void); but see *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989) (finding violation of automatic stay voidable rather than void ab initio).  The Sixth Circuit recognizes an exception to Rooker-Feldman when the state court judgment was "procured through fraud, deception, accident, or mistake ... "*Sun Valley Foods Co. v. Detroit Marine Terminals, Inc. (In re Sun Valley Foods Co.)*, 801 F.2d 186, 189 (6th Cir. 1986).  Moreover, it has been determined that the Rooker-Feldman rule does not bar a suit in federal court brought by an individual who was not a party to the state court action.  See *Snider v. City of Excelsior Springs*, Mo., 154 F.3d 809, 812 (8th Cir. 1998) (citing *Johnson v. De Grandy*, 512 U.S. 997 (1994); *U.S. v. Owens*, 54 F.3d 271, 274. Several circuits have also recognized an exception to Rooker-Feldman when a federal statute specifically authorizes federal review of a final state court decision.  See *Plyer v. Moore*, 129 F.3d 728, 732 (4th Cir. 1997) (finding Rooker-Feldman does not touch the writ of habeas corpus); *Young v. Murphy*, 90 F3d 1225, 1230 (7th Cir. 1993); *Ritter v. Ross*, 992 F.2d 750, 753 (7th Cir. 1993); *Blake v. Papadakos*, 953 F.2d 68, 71 n.2 (3d Cir. 1992); see also 28 U.S.C. Section 2241 (2000) (authorizing federal district courts to review state court decisions in habeas corpus proceedings); In re Glass, 240 B.R. at 785-86. Cf. In re Gruntz, 202 F.3d 1074, 1079 (9th Cir. 2000) (noting habeas corpus not "exception" to Rooker-Feldman, but procedure with roots in statutory jurisdiction parallel to, and in no way precluded by, the doctrine)." [http://www.fcsl.edu/LawReview/Vol2Num1/Proctor.htm]

In general, the venue was right!  Reiteratively, the case should be re-transferred to Macon, Atlanta.  An excerpt under jurisdiction and venue from 42 USCS Section 1985, n 213 read thus:

"An action based on alleged conspiracy within meaning of 42 USCS Section 1985(3) may be brought in district where conspiracy was formed or in any district where over act occurred. [*Jones v. Bales* (1972 DC GA) 58 FRD 45, 3, aff'd (1973, CA 5 GA) 480 F2d 805]

## 11)    PLAINTIFF'S VIEWPOINT FOR THE COURT'S LACK OF JURISDICTION

The Plaintiff's stance of the Court's lack of jurisdiction was that the case was originally filed in the United States' District Court, Middle District of Georgia, Macon. In jurisprudence, respect should be palpably given to *stare decisis*. The said Court shirked its constitutional and statutory duties, thus transfer of the case to Massachusetts. "The source of water should not be polluted." Therefore, it would be judicious to re-transfer the case to Macon. The Court's transfer was obviously wrong and should be rectified expeditiously. "If one proved that s/he is ignorant, her/his kins/wo/men should teach the person."

The Court had jurisdiction regardless to the original deceitful nature of the 11th Amendment of the United States' Constitution – Article III (Section 2); 48A Corpus Juris Secundum Section 86]

## 12)    STATE COURT JURISDICTION

The Defendant earnestly prayed the Court to remand the case to the State Court. That would be fine, but the defects existed historically. The Defendant should not be a judge and juror in its own case. The Defendant angled at the prevalence of that!

More, state courts undoubtedly exercised concurrent jurisdiction with federal district courts over cases arising under 42 USCS Section 1985. [*Bennan v. Board of Governors of Rutgers, State Univ.* (1976, DC NJ) 413 F Supp 1274, 12 BNA FEP Cas 1393, 12 CCH EPD #10981]

**13)  PLAINTIFF'S CONDEMNATION TO EXHAUSTION OF STATE'S REMEDIES WAS UNALLOWABLE**

If the Defendant had modicum of intellectual humility, intellectual courage and faith-to-reasons, it would not condescend to the matter in question. The Defendant's prayer qualified perfectly for *legal impossibility*, all things being equal.  The case hinged irrefutably on Civil Rights Act.  [*Alle v. Medrano* (1974) 416 US 802, 40 L Ed 2d 566, 94 S Ct 2191, 86 BNA LRRM 2215, 74 CCH LC # 10030 (superseded by statute on other grounds as stated in *Turner Broadcasting Sys. v. FCC* (1992, DC Dist Col) 810 F Supp 1308); *Hazzard v. Weinberger* (1974, SD NY) 382 F Supp 225 aff'd without op (1975, CA2 NY) 519 F2d 1397]

**14)  COURT'S ABSTENTION AND STAY OF PROCEEDING WOULD BE UNINTELLIGENT**

The case matched with *Marshall v. Sawyer* (1962, CA9 Nev) 301 F2d 639, 5 FR Serv 2d 73, though dismissed.  In the publication, the dismissal was condemned.  It read, thus:

"An action brought for damages and injunctive relief under 42 USC Section 1985 by a plaintiff alleging that he was excluded from a hotel because of inclusion of his name in a "black book", compiled by a state gambling commission and distributed to hotels operating gambling casinos with instructions that such hotels would be expected to co-operate with the commission in order to retain their casino licenses, should not have been dismissed by the district court on the supposed grounds that the Federal Court should abstain and remit the plaintiff to his State Court remedies."

Another excerpt read, thus:

"Presence of state constitutional provision which is mirror image of federal counterparts does not justify abstention in action brought under 42 USCS Section 1985 challenging constitutionality of statutes under Federal

and State law where statutes are crystal clear and unambiguous. *Pue v. Silas* (1980, CA9 Cal) 632 F2d 74."

### 15)    FEDERAL JURISDICTION [GENERALLY]

An excerpt – 42 USCS Section 1985, n 213 No. 217 - read:

"Statute clearly creates no separate rights itself but instead confers remedies for enforcement of rights arising under Federal Constitution to hear such cases, and where no substantial federal question is presented, dismissal for want of jurisdiction is proper. *Howard v. State Dept. of Highway* (1973, CA 10 Colo) 478 F2d 581, 1973-1 CCH Trade Cases # 74509.

### 16)    PLAINTIFF'S PRESENTATION OF FEDERAL QUESTION

Recourse to the courts typified expression of protected rights, freedom of speech and liberty of contracts. [Amendment 1 and 14; 18 USC/S 18, Part 1, Chapter 13 Sections 242 and 241; 42 USC/S Sections 1981, 1983, 1985 and 1986] The Defendant's acts underscored "conduct causing deprivation." Deprivation of access to court and obstruction of justice were unconstitutional. They qualified for deprivation of Equal Protection Clause, Substantive and Procedural Due Process Clauses.

The Plaintiff's petitions of government to redressing of grievances were not criminalized! The leave-to-file condemnation was for life and unconstitutional: it qualified for "… nor cruel and unusual punishments inflicted." [Amendment 8] It represented deprivation of Due Process Clause – deprivation of liberty and property without due process of law. [Amendment 5th and 14th]

Mr. Giorlandino falsified the evidence it used to poison the mind of Judge Hinkle. That contravened substantially the legal ethics. Indeed, the manner of attainment of the leave-to-file was untruthful and justice was obviously obstructed. The Defendant had controlling or policing power over

# Lab-184SL-082

\\server\name

PSCRIPT Page Separator

Attorneys Giorlandino and Hines. Sadly, it did not see the need to act and that culminated into negligence[2] and "conduct causing deprivation" in many ways.

Reiteratively, the rights deprived were Equality, Liberty of Contracts and Due Process Clauses. More, the case associated with Civil Rights Acts!

## 17)    THE DEFENDANT AS "COURTS OR COURT PERSONNEL"

An excerpt read, thus:

> As regards immunity Section 1983 Supreme Court has extended absolute immunity to Judges, legislators, and prosecutors when they are performing their respective judicial, legislative, and prosecutorial functions and, in contrast, other governmental officials enjoy only qualified immunity shielding them against liability when they act in good faith and reasonably believe their actions are constitutional; stated differently, to be entitled to such immunity, they act reasonably and without malice. *Princeton Community Phone Book, Inc. v. Bate* (1978 CA3 NJ) 582 F2d 706, 1978-2 CCH Trade Cases # 62138, Cert den (1978) 439 US 966, 58 L Ed 2d 424, 99 S Ct454."

Another excerpt from 42 USCS Section 1983, n 467 no. 468 read:

> "Judicial officer is not immune from civil action that complains of acts that are properly characterized as ministerial or administrative as opposed to judicial; where initiative and independence of judiciary is not effectively impaired by suit, the doctrine of judicial immunity does not apply. *Shore v. Howard* (1976, ND Tex) 414 F Supp 379."

Another excerpt read:

---

[2] [Harper, James and Gray -- The Law of Torts, Second Edition, Volume 3 Section 16.1 defined negligence according to the Restatement of Torts "as conduct which fall below the standard established by law for protection of others against unreasonable risk of harm. State of mind of indifference or inadvertence. Negligence resulted from ignorance, stupidity, bad judgment, timidity or forgetfulness. Negligence Resulted from deficiencies in knowledge, memory, observation, imagination, foresight, intelligence, Judgment, quickness of reaction, deliberation, coolness, determination and courage. Constitution of Negligence must reflect "voluntary" conduct -- conscious manifestation of the actor's will or knowing That one's conduct involves a substantial chance of injuring person or property of others -- *Agranowitz v. Levine*, 298 Mich. 18, 298 N.W. 388 (1941)]

"Enforcement officials, including courts and members of judiciary when acting in enforcement capacity, may be sued in action under Section 1983 challenging, constitutionality of statute and seeking declaratory and injunctive relief. *Deary v. Guardian Loan Co.* (1985, SD NY) 623 F. Supp 630."

## 18)   DISTRICT COURT REVIEW OF STATE COURT DECISION

It would be against the maximum and optimum interest of justice to argue that the Court had no jurisdiction over the case. The Plaintiff never presented the conduct of the Defendant before any administrative or judicial organ in Massachusetts besides the Complaints the Plaintiff filed with the Defendant. Could that constitute judicial review? Therefore, the Defendant's invocation of Rooker-Feldman doctrine was crassly unintelligent. [*Univ. of Tennessee v. Eliot*, Tenn. 1986, 106 S. Ct. 3220, 478 U.S. 788, 92 L. Ed 635; *GASH Associates v. Village of Rosemont*, Ill., C.A.7 (Ill.) 1993, 995 F.2d 726]

## 19)   QUALIFICATION TO ROOKER-FELDMAN DOCTRINE

Reiteratively, in the legal kingdom nothing was hard-and-fixed. Under Rooker/Feldman doctrine – 42 USC Section 1983 no 5052 read:

"Judge who brought action against Pennsylvania Judicial Inquiry and Review Board and Pennsylvania Supreme Court challenging his removal from office did not avoid requirements of rule prohibiting federal district courts from reviewing decision of state's highest court by requesting only declaratory relief, where judge sought to use declaration in offensive manner to prevent ongoing state proceeding. [*White v. Judicial Inquiry and Review Bd. Of Pennsylvania*, E.D. Pa. 1990, 744 F.Supp. 658."

## 20)   FILING ACTIONS

Petitions for redress of grievances were constitutionally provided. [First Amendment] It was not a proscribed act. It was self-regulated, thus

"*malicious prosecution.*" Judge Hinkle and Attorney Giorlandino's gate-keeping attitude, thus restriction of the Plaintiff's access to the court was preposterous, insidious and invidious. Mr. Giorlandino knowingly poisoned the mind of Judge Hinkle. Sadly, she acted recklessly and girlishly to deprive the Plaintiff direct access to the Suffolk Superior and allegedly other Massachusetts' Superior Courts – Lowell and Middlesex. The Plaintiff knew nothing about the Lowell and Middlesex Superior Courts' direct access restriction. The burden of proof rested with Mr. Giorlandino. "The person, whose mother is a dealer in rotten goods should know [all] the butterflies with deformed eyes." "Man will be guilty and not God."

The Defendant as a reasonable and prudent person should have known that access deprivation to courts was near-moral turpitude and palpably unconstitutional. That could have prompted it to exercise its policing power to remedy the insidious and invidious conduct of the Attorneys under its control. Inertia prevailed, because the Defendant was hearing the voice of John the Baptist. Since the Plaintiff could not hear the self-same voice, the Plaintiff commenced the proceedings.

The only crime the Plaintiff committed to be condemned to "leave-to-file," which was discriminatory was an earnest measures to correct injustice the State's actors and Non-States' actors condemned the Plaintiff to without moral qualm. Was such a constitutionally protected measure unintelligent or criminalized or proscribed? [*Kimble v. D. J. McDuffy, Inc.*, C.A.5 (La.) 1981, 648 F.2d 340, certiorari denied 102 S. Ct. 687 454 U.S. 1110, 70 L.Ed.2d 651; *Britt v. Suckle*, D.C. Tex 1978, 453 F. Supp. 987]

## 21)  INJURY TO PERSON OR PROPERTY

Certainly, the Plaintiff suffered palpable and bottomless injury to person: it would not be unintelligent to associating "leave-to-file" with injury to property. An excerpt from 42 Section 1985 note 177 No. 178 read:

"Civil right Statute creating cause of action for conspiracy to injure party or witness on account of having attended or testified in federal court contains no requirement of class-based animus, but plaintiff must prove four elements: conspiracy by defendant; to injure party or witness in his person or property; because of attending federal court or testifying in any manner pending in federal court; resulting in injury or damages to plaintiff. [*Portman v. County of Santa Clara*, C.A.9 (Cal.) 1993, 995 F.2d 898."

## 22) EQUAL PROTECTION – GENERALLY

The head was from Section 1985 No. 184 and it read:

"In order for an obstruction of justice to be actionable under this section which relates to conspiracies to violate civil rights, such obstruction of justice must be undertaken with intent to deny to a citizen the equal protection of the laws or to injure him or his property for lawfully enforcing or attempting to enforce the right of any person or class of persons to equal protection of the laws. [*Williams v. St. Joseph Hospital*, C.A. 7 (Ill.) 1980, 629 F.2d 448."

Another read:

"Second part of 1985(2) which applied to obstructing justice in state courts, requires that the conspiracy be motivated by an intent to deny equal protection. [*Rhodes v. Mabus*, S.D. Miss. 1987, 676 F.Supp. 755]

## 23) NEGLIGENCE

The Plaintiff had painstakingly defined the sub-head negligence earlier. The sub-head originated from 42 USC 1986 Note 9 and No. 10. It read:

"Showing of negligence is sufficient to maintain Section 1986 claim for neglecting to prevent civil rights violation; although discriminatory intent is essential in providing Section 1985(3)

conspiracy, it does not follow that defendant charged under Section 1986 with neglecting to intervene in such a conspiracy has to share the class-based animus. [*Clark v. Clabaugh*, C.A. 3 (Pa.) 20 F.3d 1290]

**24)  PERSONS PROTECTED**

The sub-head originated from 42 Section 1986 Note 9 No 12 and it read:

"Aliens are protected under this Section and Section 1985 of this title creating a cause of action against a person who refuses to aid in preventing commission of conspiratorial wrongs. [*Vietnamese Fisherman's Assn'n v. Knight of Ku Klus Klan*, D.C. Tex. 1991, 518 F. Supp. 993."

**25)  COMPARISON OF DEFENDANT WITH BAR ASSOCIATIONS**

An excerpt from 42 Section 1986 Note 9 and No 20 entitled "__ Bar associations" read:

"County bar association, which allegedly was aware of policy imposed by county court requiring attorneys not to present joint physical child custody request, but which had no power to discipline Attorneys, was not by mere indifference liable on civil rights claim. [*Humphrey v. Court of Common Pleas of New York County*, Pa., M.D.Pa. 1986, 640 F. Supp. 1239."

However, that was not the case with the Defendant. It had the power to police the Attorneys in question, but elected to chase the rats when its house was engulfed hypothetically.

**26)  DEFENDANT'S 11TH AMENDMENT'S IMMUNITY SOPHISM**

Like any other things, the law from the Defendant's viewpoints typified traditionalism or stagnationistic tendencies and not modernism or situationalistic. Truly, legal evolution should not be disconnected from situationalistic approaches. The 11th Amendment self-corrected itself – it

provided for "Tort Action Against State Officials" and ….. [*Trindal v. Wesley*, 167 U.S. 204 (1892)] The truth should be tested! [Exhibits 4 and 5 supra] For scientific resolution, the Court adopted the rule of *United States v. Lee*, 106 U.S. 195 (1883)] It went on thus:

> "The immunity of a State from suit has long been held not to extend to actions against State Officials for damages arising out of willful and negligent disregard of state laws. *Johnson v. Lankford*, 245 U.S. 541 (1918); *Martin v. Lankford*, 245 U.S. 547 (1918); *Scheuer v. Rhodes*, ("… in which the Court held that plaintiffs were not barred by the Eleventh Amendment or other immunity doctrines from suing the governor and other officials of a State alleging that they deprived Plaintiffs of federal rights under color of state law and seeking damages, when it was clear that plaintiffs were seeking to impose individual and personal liability on the officials. There was no "executive immunity" from suit, the Court held; rather, the immunity of State Officials is qualified and varies according to the scope of discretion and responsibilities of the particular office and the circumstances existing at the challenged action was taken. These suits, like suits against local officials and municipal corporations, are typically brought pursuant to 42 U.S.C. Section 1983 and typically involve all the decisions respecting liability and immunities thereunder. On the scope of immunity of federal officials, see supra pp. 748-51." [United States' Enlarged Constitution," pp. 1544-1545]

More, the importance of *Chisholm v. Georgai* 2 U.S. 419 (1793) would not be over-emphasized.

## 27)   COULD THE DEFENDANT BE SUED [AT THE FEDERAL COURT]?

The case [in question] was not a virgin action – the Defendant had been sued at the federal court. [*Jakobsen v. Massachusetts Port Authority*, 520 F.2d 819m 813 (1st Cir. 1975) (statutory limitation on damages to be award against a public quasi-public entity is affirmative defense); *Leal v. Georgia Dept. of Corrections*, No. 00-14688 (appealed from the United

States' District Court for the Northern District of Georgia (No. 00-00393-
CV-JOF-1), J. Owen Forrester, Judge); *Vinyard v. Wilson* (Sheriff of Walker
County, Georgia) (11th Cir. No. 02-10898) (appealed from United
States District Court for the Northern District of Georgia (No. 00-00294-
CV-HLM04)]

An excerpt read:

"This rationale of course created the well-recognized irony that an
official's unconstitutional conduct constitutes state action under
the Fourteenth Amendment and not the Eleventh Amendment.
[http://www.falsea.../drano62-opposition-dismiss-Judge-
Complaint, htl]

Another excerpt read:

"The primary issue at bar is the facial challenge to the un-
constitutional statute, M.G.L.c. 215, Section 56A. The second
issues are part of "a species of tort liability created by Section
1983 "in favor of persons who are deprived of rights secured
by the Federal law. *Crane v. Comm'r. of Public Welfare*,
400 Mass. (1987)."

The last, but not the least excerpt read, thus:

"That the doctrine of sovereign immunity does not protect conduct
which has been prohibited by the sovereign is clearly demonstrated by
the case on which petitioners chiefly rely, *Larson v. Domestic &
Foreign Commerce Corp.*, 337 U.S. 682 (1949). The Larson opinion
teaches that the actions of state officials are not attributable to the
State – are *ultra vires* – in two different types of situations: (1) when
the official is engaged in conduct that the sovereign has not
authorized, and (2) when he has engaged in conduct that the sovereign
has forbidden. A sovereign, like any other principal, cannot authorize
its agent to violate the law. When an agent does so, his actions are
considered *ultra vires* and he is liable for his own conduct under the
law of agency. Both types of *ultra vires* conduct are clearly identified
in Larson."



**LII**
legal information institute

**U.S. Constitution**

collection home                                                        search

## The Constitution of the United States of America

We the people of the United States, in order to form a more perfect union, establish justice, insure domestic tranquility, provide for the common defense, promote the general welfare, and secure the blessings of liberty to ourselves and our posterity, do ordain and establish this Constitution for the United States of America.

- Table of Articles and Amendments
- Overview of Full Constitution

copyright                           about us                                send email

FIRST 01

# CONSTITUTION OF THE COMMONWEALTH OF MASSACHUSETTS.



### PREAMBLE.

The end of the institution, maintenance, and administration of government, is to secure the existence of the body politic, to protect it, and to furnish the individuals who compose it with the power of enjoying in safety and tranquillity their natural rights, and the blessings of life: and whenever these great objects are not obtained, the people have a right to alter the government, and to take measures necessary for their safety, prosperity and happiness.

The body politic is formed by a voluntary association of individuals: it is a social compact, by which the whole people covenants with each citizen, and each citizen with the whole people, that all shall be governed by certain laws for the common good. It is the duty of the people, therefore, in framing a constitution of government, to provide for an equitable mode of making laws, as well as for an impartial interpretation, and a faithful execution of them; that every man may, at all times, find his security in them.

We, therefore, the people of Massachusetts, acknowledging, with grateful hearts, the goodness of the great Legislator of the universe, in affording us, in the course of His providence, an opportunity, deliberately and peaceably, without fraud, violence or surprise, of entering into an original, explicit, and solemn compact with each other; and of forming a new constitution of civil government, for ourselves and posterity; and devoutly imploring His direction in so interesting a design, do agree upon, ordain and establish the following *Declaration of Rights, and Frame of Government,* as the **Constitution of the Commonwealth of Massachusetts.**

## PART THE FIRST
### *A Declaration of the Rights of the Inhabitants*
### *of the Commonwealth of Massachusetts.*

Article I. All men are born free and equal, and have certain natural, essential, and unalienable rights; among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing, and protecting property; in fine, that of seeking and obtaining their safety and happiness. [Annulled by Amendments, Art. CVI.]

Article II. It is the right as well as the duty of all men in society, publicly, and at stated seasons to worship the Supreme Being, the great Creator and Preserver of the universe. And no subject shall be hurt, molested, or restrained, in his person, liberty, or estate, for worshipping God in the manner and season most agreeable to the dictates of his own conscience; or for his religious profession or sentiments; provided he doth not disturb the public peace, or obstruct others in their religious worship. [See Amendments, Arts. XLVI and XLVIII.]





# LII

legal information institute **Law About . . .**

collection home        search                          tell me more

LII home

## civil rights: an overview

A civil right is an enforceable right or privilege, which if interfered with by another gives rise to an action for injury. Examples of civil rights are freedom of speech, press, assembly, the right to vote, freedom from involuntary servitude, and the right to equality in public places. Discrimination occurs when the civil rights of an individual are denied or interfered with because of their membership in a particular group or class. Statutes have been enacted to prevent discrimination based on a persons race, sex, religion, age, previous condition of servitude, physical limitation, national origin and in some instances sexual preference.

The most important expansion of civil rights in the United States was the enactment of the Thirteenth and Fourteenth Amendments. The Thirteenth Amendment abolished slavery throughout the United States. *See* U.S. Const. amend. XIII. In response to the 13th Amendment, various states enacted "black codes" which were intended to limit the civil rights of the newly free slaves. In 1868 the 14th Amendment was passed to counter the "black codes" and ensure that no state "shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States . . . [or] deprive any person of life, liberty, or property without due process of law, [or] deny to any person within its jurisdiction the equal protection of the laws." *See* U.S. Const. amend. XIV. Congress was also given the power by section five of the Fourteenth Amendment to pass any laws needed for its enforcement. During the "reconstruction era" that followed Congress enacted numerous civil rights statutes. Many of these statutes are still in force today and protect individuals from discrimination and from the deprivation of their civil rights. Section 1981 of Title 42 (Equal Rights Under the Law) protects individuals from discrimination based on race in making and enforcing contracts, participating in lawsuits, and giving evidence. *See* 42 U.S.C. § 1981.Other statutes, derived from acts of the reconstruction era, that protect against discrimination include: Civil Action For Deprivation of Rights (*See* 42 U.S.C. § 1983) Conspiracies to Interfere With Civil Rights (*See* 42 U.S.C. § 1985); Conspiracy Against Rights of Citizens (*See* 18 U.S.C. § 241); Deprivation of Rights Under Color of Law, (*See* 18 U.S.C. § 242); The Jurisdictional Statue for Civil Rights Cases (*See* 28 U.S.C. § 1443); Peonage Abolished (*See* 42 U.S.C. § 1994).

## menu of sources

### Federal Material

*Federal Constitution and Statutes*

- The United States Constitution
- Chapter 21 (Civil Rights) of Title 42 of The United States Code

*Federal Agency Regulations*

- Code of Federal Regulations:
  - 28 C.F.R., Part 42 - Dept. of Justice
  - 29 C.F.R., Chapt. XIV - Equal Employment Opportunity Comm'n
  - 34 C.F.R., Chapt. I - Office for Civil Rights, Dept. of Educ.
  - 45 C.F.R., Chapt. VII - Civil Rights Commission

*Federal Judicial Decisions*

- U.S. Supreme Court:
  - Historic Constitutional Law Decisions
  - Recent Civil Rights Decisions
- U.S. Circuit Courts of Appeals: Recent Decisions on Civil Rights

State Material

*State Statutes*

- Search Statutes of State in Question

*State Judicial Decisions*

- N.Y. Court of Appeals:
  - Recent Civil Rights Decisions
  - Commentary from

The most prominent civil rights legislation since reconstruction is the Civil Rights Act of 1964. Decisions of the Supreme Cour, at the time limited Congressional enforcement of the 14th Amendment to state action. (Since 1964 the Supreme Court has expanded the reach of the 14th Amendment in some situations to individuals discriminating on their own). Therefore, in order to reach the actions of individuals, Congress, using its power to regulate interstate commerce, enacted the Civil Rights Act of 1964 under . Discrimination based on "race, color, religion, or national origin" in public establishments that had a connection to interstate commerce or was supported by the state is prohibited. *See* 42 U.S.C. § 2000a. Public establishments include places of public accommodation (e.g., hotels, motels, trailer parks), restaurants, gas stations, bars, taverns, and places of entertainment in general. The Civil Rights Act of 1964 and subsequent legislation also declared a strong legislative policy against discrimination in public schools and colleges which aided in desegregation. Title VI of the civil rights act prohibits discrimination in federally funded programs. Title VII of the Civil Rights Act prohibits employment discrimination where the employer is engaged in interstate commerce. Congress has passed numerous other laws dealing with employment discrimination. *See* Employment Discrimination.

The judiciary, most notably the Supreme Court, plays a crucial role in interpreting the extent of the civil rights. A single Supreme Court ruling can change the very nature of a right throughout the entire country. Supreme Court decisions can also affect the manner in which Congress enacts civil rights legislation, as occurred with the Civil Rights Act of 1964. The federal courts were/are crucial in mandating and supervising school desegregation programs and other programs established to rectify state or local discrimination.

State constitutions, statutes and municipal ordinances provide further protection of civil rights. *See, e.g.,* New York's Civil Rights Law.

The existence of civil rights and liberties are recognized internationally by numerous agreements and declarations. Often these rights are included in agreements in which nations pledge themselves to the general protection of Human Rights. The United States has recently adhered to the most notable international agreement on civil rights: The International Convenant on Civil and Political Rights.

liibulletin-ny
- Appellate Decisions from Other States

### International Material

*Conventions and Treaties*

- The International Covenant on Civil and Political Rights
- Collection of Other Treaties Dealing with Human Rights

Other References

*Key Internet Sources*

- Human Rights Around the World
- U.S. Department of Justice Civil Rights Division
- Human Rights Around the World
- Civil Rights (World Internet Directory)
- AAAS Human Rights Action Network
- Results
- American Civil Liberties Union
- Amnesty International
- freeadvice.com
- Human Rights Watch
- ABA Section of Individual Rights & Responsibilities

*Useful Offnet (or Subscription - $) Sources*

- Good Starting Point in Print: Harold S. Lewis, Jr., *Hornbook on Civil Rights and Employment Discrimination Law*, West Group (1997)
- LII Disk Materials

See also Employment Discrimination

Other Constitutional and Individual Rights Topics

Other Employment Law Topics

copyright        about us        help



is of the apparent view that
:ate sovereign immunity and
language be unmistakably
:ting to suit in federal court
nder the Rehabilitation Act
is test, not because of any
ipients" within the meaning
ieir constitutional role, the
recipients of federal aid." [82]
anguage Congress chose to
: refusing to look at the leg-
language. [83] The result is
'magic words" the Court ap-

e Court reverses itself and
gate state immunity in fed-
her Article I powers, Con-
endment, nor apparently by
m providing authority for
eral statutory rights, thus
nmon law sovereign immu-

---

.S. 223, 230 (1989), and Hoffman
I.S. 96, 103–04 (1989).
Dellmuth v. Muth, 491 U.S. 223,
.nalysis in Pennsylvania v. Union
t and dissenting in part). Justice
56 n.7 (concurring); Justice Ken-
pressly noted that the statute be-
th unmistakably clarity because,
ther the Eleventh Amendment or

U.S. 234, 246 (1985). And see

aintenance, 492 U.S. 96, 103–04

ss provided that States were not
im suits under several laws bar-
l assistance. Pub. L. No. 99–506,
'. Following Dellmuth, which in-
amendments, Congress overruled
106 (1990), 20 U.S.C. § 1403. See
. L. No. 101–553, § 2, 104 Stat.
ate officials liable in damages for

ees of the Dept of Public Health
'elfare, 411 U.S. 279, 287 (1973),
ily the case. Id. at 298 (concur-
ought in state courts, Maine v.
s are inapplicable. Id. at 9 n.7;
asmuch as state courts are ordi-

Although acknowledging that the Eleventh Amendment was
not an issue because the § 1983 suit had been pursued in state
court, nonetheless the Court applied its strict rule of construction,
requiring "unmistakable clarity" by Congress in order to subject
States to suit, in holding that States and state officials sued in
their official capacity could not be made defendants in § 1983 ac-
tions in state courts. [86] While the Court is willing to recognize ex-
ceptions to the clear statement rule when the issue involves subjec-
tion of states to suit in state courts, the Court will normally opt
for "symmetry" that treats the states' liability or immunity the
same in both state and federal courts. [87]

## Suits Against State Officials

Mitigation of the wrongs possible when the State is immune
from suit has been achieved under the doctrine that sovereign im-
munity, either of the States or of the Federal Government, does not
ordinarily prevent a suit against an official to restrain him from
commission of a wrong, even though the government is thereby re-
strained. [88] The doctrine is built upon a double fiction: that for pur-
poses of the sovereign's immunity, a suit against the official is not
a suit against the government, but for the purpose of finding state
action to which the Constitution applies, the official's conduct is
that of the State. [89] The doctrine preceded but is most noteworthily
associated with the decision in Ex parte Young, [90] a case truly de-
serving the overworked adjective, seminal.

Young arose when a state legislature passed a law reducing
railroad rates and providing severe penalties for any railroad that
failed to comply with the law. Plaintiff railroad stockholders
brought an action to enjoin Young, the state attorney general, from
enforcing the law, alleging that it was unconstitutional and that
they would suffer irreparable harm if he were not prevented from
acting. An injunction was granted forbidding Young from acting on
the law, an injunction he violated by bringing an action in state

---

narily obligated to enforce federal law, cf. Testa v. Katt, 330 U.S. 386 (1960), state
courts are presumably required to hear § 1983 and other claims, but the Court has
expressly reserved the issue. Martinez v. California, 444 U.S. 277, 283 n.7 (1980).
[86] Will v. Michigan Dept of State Police, 491 U.S. 58 (1989).
[87] Hilton v. South Carolina Pub. Rys. Comm'n, 112 S. Ct. 560, 564–66 (1991)
(interest in "symmetry" is outweighed by stare decisis, the FELA action being con-
trolled by Parden v. Terminal Ry.
[88] See, e.g., Larson v. Domestic and Foreign Corp., 337 U.S. 682 (1949), where
the majority and dissenting opinions utilize both federal and Eleventh Amendment
cases in a suit against a federal official. See also Tindal v. Wesley, 167 U.S. 204,
213 (1897), applying to the States the federal rule of United States v. Lee, 106 U.S.
196 (1882).
[89] C. WRIGHT, THE LAW OF FEDERAL COURTS § 48 (4th ed. 1983).
[90] 209 U.S. 123 (1908).

not view them as "compensation," inasmuch as they were not to be paid to victims of past discrimination but rather used to better conditions either for them or their successors.[127] The Court also applied *Edelman* in *Papasan v. Allain*,[128] holding that a claim against a state for payments representing a continuing obligation to meet trust responsibilities stemming from a 19th century grant of public lands for benefit of education of the Chickasaw Indian Nation is barred by the Eleventh Amendment as indistinguishable from an action for past loss of trust corpus, but that an Equal Protection claim for present unequal distribution of school land funds is the type of ongoing violation for which the Eleventh Amendment does not bar redress.

Thus, as with the cases dealing with suits facially against the States themselves, the Court's recent greater attention to state immunity in the context of suits against state officials has resulted in a mixed picture, of some new restrictions, of the lessening of others. But a number of Justices has resorted to the Eleventh Amendment increasingly, as one means of reducing federal-state judicial conflict.[129] One may, therefore, expect this to be a continuingly contentious area.

**Tort Actions Against State Officials.**—In *Tindal v. Wesley*,[130] the Court adopted the rule of *United States v. Lee*,[131] a tort suit against federal officials, to permit a tort action against state officials to recover real property held by them and claimed by the State and to obtain damages for the period of withholding. The immunity of a State from suit has long been held not to extend to actions against state officials for damages arising out of willful and negligent disregard of state laws.[132] The reach of the rule is evident in *Scheuer v. Rhodes*,[133] in which the Court held that plaintiffs were not barred by the Eleventh Amendment or other immunity doctrines from suing the governor and other officials of a State alleging that they deprived plaintiffs of federal rights under color of state law and seeking damages, when it was clear that plaintiffs were seeking to impose individual and personal liability on the offi-

[127] Id. at 290 n.22. See also Hutto v. Finney, 437 U.S. 678, 690–91 (1978) (affirming order to pay attorney's fees out of state treasury as an "ancillary" order because of bad faith of State).
[128] 478 U.S. 265 (1986).
[129] See, e.g., Florida Dep't of State v. Treasure Salvers, 458 U.S. 670, 702 (1982) (dissenting opinion); Patsy v. Florida Board of Regents, 457 U.S. 496, 520 (1982) (dissenting opinion.) And see Employees of the Dep't of Public Health and Welfare v. Department of Public Health and Welfare, 411 U.S. 279 (1973).
[130] 167 U.S. 204 (1897).
[131] 106 U.S. 196 (1882).
[132] Johnson v. Lankford, 245 U.S. 541 (1918); Martin v. Lankford, 245 U.S. 547 (1918).
[133] 416 U.S. 233 (1974).

cials. There was no "executive immunity" from suit, the Court held; rather, the immunity of state officials is qualified and varies according to the scope of discretion and responsibilities of the particular office and the circumstances existing at the time the challenged action was taken.[134]

[134] These suits, like suits against local officials and municipal corporations, are typically brought pursuant to 42 U.S.C. § 1983 and typically involve all the decisions respecting liability and immunities thereunder. On the scope of immunity of federal officials, see supra, pp. 765–91.

# GENERAL LAWS OF MASSACHUSETTS

### PART III.
### COURTS, JUDICIAL OFFICERS, AND PROCEEDINGS IN CIVIL CASES

### TITLE IV.
### CERTAIN WRITS AND PROCEEDINGS IN SPECIAL CASES

**CHAPTER 258.** CLAIMS AND INDEMNITY PROCEDURE FOR THE COMMONWEALTH, ITS MUNICIPALITIES, COUNTIES AND DISTRICTS AND THE OFFICERS AND EMPLOYEES THEREOF

### Chapter 258: Section 1 Definitions

Section 1. As used in this chapter the following words shall have the following meanings:--

""Acting within the scope of his office or employment", acting in the performance of any lawfully ordered military duty, in the case of an officer or soldier of the military forces of the commonwealth.

""Executive officer of a public employer", the secretary of an executive office of the commonwealth, or in the case of an agency not within the executive office, the attorney general; the adjutant general of the military forces of the commonwealth; the county commissioners of a county; the mayor of a city, or as designated by the charter of the city; the selectmen of a town or as designated by the charter of the town; and the board, directors, or committee of a district in the case of the public employers of a district, and, in the case of any other public employer, the nominal chief executive officer or board.

""Public attorney", the attorney who shall defend all civil actions brought against a public employer pursuant to this chapter. In the case of the commonwealth he shall be the attorney general; in the case of any county he shall be the district attorney as designated in sections twelve and thirteen of chapter twelve; in the case of a city or town he shall be the city solicitor or town counsel, or, if the town has no such counsel, an attorney employed for the purpose by the selectmen; in the case of a district he shall be an attorney legally employed by the district for that purpose. A public attorney may also be an attorney furnished by an insurer obligated under the terms of a policy of insurance to defend the public employer against claims brought pursuant thereto.

""Public employee", elected or appointed, officers or employees of any public employer, whether serving full or part-time, temporary or permanent, compensated or uncompensated, and officers or soldiers of the military forces of the commonwealth. For purposes of this chapter, the term ""public employee" shall include an approved or licensed foster caregiver with respect to claims against such caregiver by a child in the temporary custody and care of such caregiver or an adult in the care of such caregiver for injury or death caused by the conduct of such caregiver; provided, however, that such conduct was not intentional, or wanton and willful, or grossly negligent. For this purpose, a caregiver of adults means a member of a foster family, or any other individual, who is under contract with an adult foster care provider as defined and certified by the division of medical assistance.

""Public employer", the commonwealth and any county, city, town, educational collaborative, or district, including any public health district or joint district or regional health district or regional health board established pursuant to the provisions of section twenty-seven A or twenty-seven B of chapter one hundred and eleven, and any department, office, commission, committee, council, board, division, bureau, institution, agency or authority thereof including a local water and sewer commission including a municipal gas or electric plant, a municipal lighting plant or cooperative which operates a telecommunications system pursuant to section 47E of chapter 164, department, board and commission, which exercises direction and control over the public employee, but not a private contractor with any such public employer, the Massachusetts Bay Transportation Authority, the Massachusetts Port Authority, the Massachusetts Turnpike Authority, or any other independent body politic and corporate. With respect to public employees of a school committee of a city or town, the public employer for the purposes of this chapter shall be deemed to be said respective city or town.

Return to:

** Next Section ** Previous Section ** Chapter Table of Contents ** Legislative Home Page

# GENERAL LAWS OF MASSACHUSETTS

### PART III.
### COURTS, JUDICIAL OFFICERS, AND PROCEEDINGS IN CIVIL CASES

### TITLE IV.
### CERTAIN WRITS AND PROCEEDINGS IN SPECIAL CASES

**CHAPTER 258.** CLAIMS AND INDEMNITY PROCEDURE FOR THE COMMONWEALTH, ITS MUNICIPALITIES, COUNTIES AND DISTRICTS AND THE OFFICERS AND EMPLOYEES THEREOF

### Chapter 258: Section 4 Instituting claims; final denial; limitation of actions

Section 4. A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer in writing and sent by certified or registered mail, or as otherwise provided by this section. The failure of the executive officer to deny such claim in writing within six months after the date upon which it is presented, or the failure to reach final arbitration, settlement or compromise of such claim according to the provisions of section five, shall be deemed a final denial of such claim. No civil action shall be brought more than three years after the date upon which such cause of action accrued. Disposition of any claim by the executive officer of a public employer shall not be competent evidence of liability or amount of damages.

Notwithstanding the provisions of the preceding paragraph, in the case of a city or town, presentment of a claim pursuant to this section shall be deemed sufficient if presented to any of the following: mayor, city manager, town manager, corporation counsel, city solicitor, town counsel, city clerk, town clerk, chairman of the board of selectmen, or executive secretary of the board of selectmen; provided, however, that in the case of the commonwealth, or any department, office, commission, committee, council, board, division, bureau, institution, agency or authority thereof, presentment of a claim pursuant to this section shall be deemed sufficient if presented to the attorney general.

The provisions of this section shall not apply to such claims as may be asserted by third-party complaint, cross claim, or counter-claim, or to small claims brought against housing authorities pursuant to sections twenty-one to twenty-five, inclusive, of chapter two hundred and eighteen; provided however, that no small claim shall be brought against a housing authority more than three years after the date upon which the cause of action arose.

Return to:

** Next Section ** Previous Section ** Chapter Table of Contents ** Legislative Home Page