UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AZUBUKO -
    Plaintiff

vs.

BOARD OF BAR OVERSEERS OF THE
SUPREME JUDICIAL COURT OF
MASSACHUSETTS -
    Defendant

CIVIL ACTION NUMBER:
04-CV-10192

## PLAINTIFF'S ANSWER TO "DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SUSPENDED NOTICE OF APPEAL" AND THE PLAINTIFF'S *SECOND* MOTION FOR JUDGE YOUNG'S SELF-DISQUALIFICATION

The Plaintiff did receive the head dated June 3rd, 2004 and postmarked self-same date: it was received on Saturday – June 5th – 2004. These would be the Plaintiff's responses:

01) "Sometimes, one will like to be reticent, but negative impact of alcohol makes it impossible." [Proverb] Sadly, the alcohol never knew that it caused its victims to be talkative." Originally, the Plaintiff did not intend to respond to the Defendant's motion in question. The motion in question would not prevent the Plaintiff from filing his suit vis-à-vis the case.

02) The reason to respond to the motion primarily hinged on the Assistant Attorney General Joss' statement or remark on page two thus: "The BBO filed a motion ... that the Complaint should be deemed frivolous under 28 U.S.C. Section 1915." The cited Code associated with "Proceedings *In Forma Pauperis*." Undoubtedly, the Plaintiff paid $150.00 filing fee for the case. The truth could be tested! Where did Ms. Joss get the information? Being an Assistant Attorney General never meant acting uncritically and uncreatively! It equally never meant thinking that one was above legal ethics or making sweeping over-generalization. She was diametrically wrong in her thought. The remark lent itself to practically numberless conclusions. She could equally say that the Plaintiff was on welfare! However, she could not conclude that the Plaintiff attended

colleges and universities on In Forma Pauperis basis. Where was the commercial rather lawyering morality? "It can be a vulturic [fun] to laugh mechanically over others' hearse or corpse, but one will not smile when the corpse is one's relative." Sober reflection would prevail! That had been life from time immemorial!

03) The Defendant's motion if granted or not would not bereave the Plaintiff his constitutional rights. Judge Young should recuse himself from the case, because the state of his mind towards the Plaintiff was likenable to the Biblical saga of Saul and David. The facts had been established not on the *bases of probabilities*, but *beyond any reasonable doubt*. Anyone who failed to see it belonged to the Bedlam. Judge Young presiding over the case exposed the Plaintiff to mountainous *injury of law*. It was immoral and unconstitutional, indeed; that also pulverized his judicial immunity. He had no jurisdiction over the case on various grounds. Importantly, the case should not have been transferred, let alone Judge Young presiding over a case of the Plaintiff that he unjustifiably deprived **direct** access to the court, which did not belong to him. That was flatly unfair! A wise wo/man should be sensitive.

04) Reiteratively, the Plaintiff would snatch at the opportunity to motion for Judge Young's self-disqualification from the case for the **second** time. He would not be able to adjudicate over the case neutrally or impartially. Undoubtedly, there existed *conflict of interest*. Hypothetically, if somebody raped the Plaintiff and Judge Young presided over the case, he would acquit the Defendant even if the Defendant admitted of the rape and argued that he did not reach orgasm; therefore, Judge Young would affirm that he was not guilty. Every game had rules! [Exhibit 1] A man who deemed it intelligent to curtail the Plaintiff's constitutional right -- First Amendment -- would not claim to be unbiased over the Plaintiff's case. "The nose is on the face." When one leered at the Plaintiff, the Plaintiff would know without mental scratching.

05) On the timing of the notice of appeal, Ms. Joss effort to trivialize it was crassly preposterous and manifestation of two-tongue in one mouth methodology of advocacy or propensity. Well, "whatever one does, one will carry them with one's head sooner or later." Indeed, it was not an intelligent course of action to embark upon. It typified hypocrisy and immoral argument! A question deserved an answer [all things being equal] The importance of *Equal Protection Clause* should not be trivialized. In

essence, the 30-day earmarked for appeal filing commenced from the Court's last action date on a given case. The Plaintiff would not be electrified over the Defendant's *nonsequitur* or unreasonable reasoning. Succinctly, the Defendant's syllogism was palpably defective. These days, there existed nothing like *statute of limitations* in the legal kingdom. The United States' Supreme Court recent ruling on a California woman's case – Ms. Maria Altmann – vis-à-vis Nazi deprivation - underscored that. She got judgment for $150 millions after 65-year of the incident. [Exhibit 2] More, s/he who elected to flog a dead horse could do so with her/his time! That would not be the Plaintiff's problem. It would be unintelligent measure for a defendant to give her/his case to a prosecutor. Truly, that represented an increasingly monumental hardship for the defendant [if that prevailed] "Water has no enemy."

## CONCLUSION

The best course of action would be for Judge Young to re-transfer the case to Macon, Georgia or respect the Plaintiff's Self-Disqualification Motions. The said Court had absolute jurisdiction over the case under *federal question, Article III (Section 2)* and *national contacts* test despite its shameful shirk of its responsibility. The truth could be tested! Again, jurisprudence and lawyering had nothing to do with abracadabra methodologies. In that case, the Plaintiff was not crying for the moon, as the Defendant would think. The Defendant enjoyed no immunity and precedents existed for unconstitutional acts, but the Court characteristically allowed eyes closure to prevail. Nonetheless, the Plaintiff would not be electrified for such a propensity. There existed no justifications for granting the Defendant's motion to dismiss, but if the Court elected to grant the motion, it never meant that the Court enjoyed *immunity* for acting latently and patently unconstitutionally over the case. With candor in communications, the Plaintiff sought not for any form of judicial tokenism over the case. If the Court listened, it would hear the still small voice of the Plaintiff without tergiversation and circumlocution. The Plaintiff empathized with the Court, but intellectual courage could be a panacea to the self-induced jurisprudence imbroglio.

**(PLEASE TURN OVER)**

**Respectfully submitted on Friday - June 11th, 2004.**

_____

CHUKWUMA E. AZUBUKO,
Pro Se,
P. O. Box 1351,
Boston -- MA 02117-1351.

## CERTIFICATE OF SERVICE

      Under the penalties for perjury, the undersigned declared that a true copy of the head was served upon the Attorney of record for the Defendant, by the United States' pre-paid first-class mail on Monday – June 14th - 2004, thus:

      Sarah M. Joss,
      Assistant Attorney General,
      Government Bureau/Trial Division,
      200 Portland Street – 3rd Floor,
      Boston – MA 02114.


_____
CHUKWUMA E. AZUBUKO,
Pro Se.



Home | News | A&E | Business | Sports | Travel | Your Life | Cars | Jobs | Personals | Real Estate

Today's Globe | Politics | Opinion | Magazine | Education | Science | NECN | Special reports | Obituaries

HOME > NEWS > LOCAL

# Zoning official must step aside, mayor says

### Asks for ruling on conflict issue

*The Boston Globe*

**TOOLS**
- PRINTER FRI
- E-MAIL TO A
- TOP E-MAILE

**SEARCH GL(**

○ Today (free)
○ Yesterday (
○ Past 30 day
○ Last 12 mor

▸ Advanced sea
▸ Subscribe now archives

By Andrea Estes, Globe Staff | June 8, 2004

Boston Mayor Thomas M. Menino demanded yesterday that the city's Zoning Board of Appeal chairman, Joseph D. Feaster Jr., withdraw from any involvement with the board panel until the State Ethics Commission can rule on whether he violated the state's conflict of interest law by working for a developer who has frequent business before the board.


ADVERTISEMENT

Menino declined to say whether he will seek Feaster's resignation from the board if the ethics commission finds he violated the law.

"If he's in violation, we'll take appropriate action," said Menino. "I'm asking him not to sit on the board until we get clarification." In addition, Menino said, city officials will investigate whether Feaster's primary residence is outside of Boston. If so, the mayor said, Feaster will be permanently removed from the board.

The Globe reported yesterday that Feaster has worked as a lawyer for nearly five years for developer Joseph LaRosa, who has built scores of homes in Roxbury and Dorchester, often after receiving variances from the zoning board Zoning Board of Appeal because the buildings do not comply with local zoning.

S P O N S O


View the new Uma


Not just an


Choose the Ir and degree t


Gau( Click he

The newspaper also reported that Feaster -- who claims on city voting and payroll records to be a resident of Roxbury -- owns a large home in Stoughton, where his cars are registered. City zoning laws require that zoning board members live in Boston. Feaster told the Globe he lives in both places.

If officials determine Feaster's primary residence is not in Boston, Menino said, Feaster will also be asked to repay thousands of dollars he has saved on his Boston property taxes. For many years, Feaster has claimed a residential exemption on the Roxbury address -- $1,110.27 this year, nearly half his total tax bill. The city offers the exemptions on properties that are owner-occupied, as a way of encouraging homeownership in the city.


June ; Click


EXHIBIT U 1

http://www.boston.com/news/local/articles/2004/06/08/zoning_official_must_step_aside_m...    6/8/2004

"We'll do the research. I've only just been made aware of this," said Menino, who named Feaster to the board in 1994.

Neither Feaster nor LaRosa returned phone calls from the Globe seeking comment yesterday.

LaRosa, a home builder from Walpole, has won repeated permission to override the city's zoning laws, even when his projects are opposed by neighbors, community groups, and the mayor's Office of Neighborhood Services. Neighbors complain that LaRosa's buildings, often squeezed onto undersized lots, are cheaply constructed and out of character with the surrounding area.

Two weeks ago, in an interview with the Globe, Feaster acknowledged helping LaRosa buy land and said he appeared at community meetings called to air neighborhood concerns about some of LaRosa's projects. Another lawyer from the six-person firm Feaster works for -- McKenzie & Associates -- appears on LaRosa's behalf before the board.

Feaster, who never sought an opinion from the ethics commission on the arrangement, said he abstains from voting on any of LaRosa's projects and does nothing to help them secure approval.

State ethics rules bar city officials from working for anyone else in matters in which the city has an interest. In general, even if the employee abstains from voting, the employee may not act on behalf of private parties who have business before their board.

Since LaRosa hired Feaster in 1999, he has secured variances from the zoning board for more than 40 projects. He was turned down only once and withdrew three applications for variances. Other members of the zoning board, however, say Feaster did nothing to advocate for board approvals for LaRosa.

Two Boston city councilors criticized Feaster's arrangement with LaRosa.

"There should be a clear investigation -- that's something that needs to be done," said Councilor-at-Large Felix Arroyo of Jamaica Plain. "When you're in public service you have to make sure you perform your duties in an ethical way."

Boston City Councilor Charles Yancey, in whose Mattapan-Dorchester district many of LaRosa's projects are located, said the ethics commission should have become involved long ago.

"It has the appearance of a conflict of interest and it's important for the ethics commission to issue a ruling," Yancey said. "He [Feaster] does recuse himself, but there is the appearance that with a wink and a nod these things are going through."

Meanwhile, Feaster's colleagues on the zoning board said yesterday they never knew that Feaster worked as an attorney for LaRosa. "I was aware that when Joe LaRosa would present, Joe Feaster would recuse," said Anthony Pisani, a board member. "I never knew specifically what the reason was."

He said Feaster never advocated for LaRosa's projects. "He does a hell of a job," he said of Feaster.

Developers and homeowners turn to the Zoning Board of Appeal if they are turned down for building permits by the city's Inspectional Services Department because their projects violate the city's zoning code. The zoning board can overrule inspectional services if the property owner has a "substantial hardship." ■


EXHIBIT U 1



**boston.com News**

your connection to The [Boston Globe]

Home | News | A&E | Business | Sports | Travel | Your Life | Cars | Jobs | Personals | Real Estate

Today's Globe | Politics | Opinion | Magazine | Education | Science | NECN | Special reports | Obituaries

HOME > NEWS > NATION > WASHINGTON

**TOOLS**
- PRINTER FRI
- E-MAIL TO A
- TOP E-MAILE

**SEARCH GLC**

- ● Today (free
- ○ Yesterday (
- ○ Past 30 day
- ○ Last 12 mor

▶ Advanced sea
▶ Subscribe now archives

**SPONSO**



Yesterday's ruling was a victory for Maria Altmann, who wants Austria to return of six Gustav Klimt works stolen by Nazis. (AP Photo)

# Ruling backs rights of citizens to sue foreign governments

*The Boston Globe*

**By Gina Holland, Associated Press | June 8, 2004**

WASHINGTON -- The Supreme Court ruled yesterday that Americans can sue foreign governments over looted art, stolen property, and war crimes dating to the 1930s, a victory for an elderly California woman trying to get back $150 million worth of paintings stolen by Nazis more than 65 years ago.

Justices said that the governments are not necessarily protected from lawsuits in US courts over old claims. But those claims could still face stumbling blocks.

Maria Altmann, who fled Austria, had attended the Supreme Court argument. The 88-year-old said the court was one of her last hopes for the return of six Gustav Klimt paintings, including two colorful, impressionistic portraits of her aunt.

EXHIBIT 2

ADVERTISEMENT


View the new Uma


Not just an


Choose the Ir and degree t


Gaug
Click he


June 2
Click



Nazis had looted the possessions of Altmann's wealthy Jewish family, including the prized paintings that now hang in the Austrian Gallery. She and her husband escaped to America after she had been detained and her husband imprisoned in labor camp.

She filed a lawsuit against the Austrian government in federal court in California, and won rulings that allowed her to pursue the case.

Justices agreed 6-3, a ruling that emboldens victims of wartime atrocities to pursue lawsuits. Women who claim they were used as sex slaves during World War II have sued Japan, and Holocaust survivors and heirs have brought a case against the French national railroad for transporting more than 70,000 Jews and others to Nazi concentration camps.

Those cases are pending at the Supreme Court and will likely be sent back to lower courts in light of yesterday's decision.

Justice John Paul Stevens, writing for the majority, said that the State Department can still ask courts to dismiss such lawsuits.

At issue in the case was a 1976 law that spelled out when other countries can be sued in the United States. The law was based on a 1952 State Department policy. The Supreme Court ruled that the law is retroactive, and can be used to bring old claims.

In a dissent, Justice Anthony M. Kennedy joined by Chief Justice William H. Rehnquist and Clarence Thomas said the decision "injects great prospective uncertainty into our relations with foreign sovereigns."

"The court opens foreign nations worldwide to vast and potential liability for expropriation claims in regards to conduct that occurred generations ago, including claims that have been the subject of international negotiation and agreement," Kennedy wrote. ∎

© Copyright 2004 Globe Newspaper Company.

⎕ PRINTER FRIENDLY   ✉ E-MAIL TO A FRIEND

feedback | help | site map | globe archives | rss
© 2004 The New York Times Company





EXHIBIT 2